G. B. COUGHRAN ET AL. v. W. L. EDMONDSON.

No. 2325. Decided January 27, 1915.

1.—Fraudulent Conveyance—Gift.

A gift to another by an insolvent debtor of a half interest in his tract of land was void as to his creditors; and the supposed interest of the donee therein could not be taken as a consideration moving from him in the exchange of such land for a stock of goods, the transfer of which was made to him. (P. 543.)

2.—Fraudulent Conveyance—Consideration.

A creditor may receive property of an insolvent debtor not more than reasonably sufficient to discharge his debt; but in considering the amount of such debt a new indebtedness created as a part of transaction obtaining the transfer of the property and secured thereby can not be included. Gallagher v. Goldfrank, Frank & Co., 75 Texas, 562, followed. (Pp. 543, 544.)

**3.—Same.**

A transaction by which an insolvent debtor places his property in the hands of a creditor to be disposed of, returning to him such interest as may be left him after such disposition, is fraudulent as to his other creditors, in that it puts the property, for an indefinite time, out of the reach of their claims.   (P. 544.)

Error to the Court of Civil Appeals, Second District, in an appeal from Mitchell County.

Edmondson sued Coughran and another. A judgment for defendants was reversed by the Court of Civil Appeals on plaintiff's appeal. Appellees obtained writ of error on the ground that the ruling conflicted with previous decisions.

*Royall G. Smith,* for plaintiffs in error.—The opinion of the Court of Civil Appeals that an insolvent debtor may prefer a creditor provided the transaction be in good faith on the part of the creditor so preferred, when considered in connection with the undisputed facts of this case is in direct conflict with and overrules the decisions of the Supreme Court in the cases of Gallagher v. Goldfrank, F. & Co.. 75 Texas, .562, 12 S. W., 964; Gregg v. Cleveland, 82 Texas, 187, 17 S. W., 778; Wallis v. Adoue, 76 Texas, 118, 13 S. W., 63; Black v. Vaughan, 70 Texas, 47, 7 S. W., 604; Oppenheimer v. Halff, 68 Texas, 409, 4 S. W., 562; and Elser v. Graber, 69 Texas, 222, 6 S. W., 560. Of the Court of Civil Appeals for the Fifth Supreme Judicial District in the case of Wallace v. Bagby, 6 Texas Civ. App., 484, 26 S. W., 520, and of the Court of Civil Appeals for the Second District in the cases of Greer, Intervener, v. Drug Co., 1 Texas Civ. App., 634, 20 S. W., 1127, and Williams v. Moore, 6 Texas Civ. App., 340, 25 S. W., 1011, which lay down the principle that while it is true that an insolvent debtor may prefer one creditor, by paying, or securing him, with property, to the exclusion of all others, that if the value of the property so taken largely exceeds the indebtedness so paid or secured, and where the creditor in any manner either in money or with a negotiable note, pays the difference in such values and that where the intention of the parties is that the creditor shall conduct a retail merchandise business with the property so taken, and, after his *debt* has been satisfied, pay over the surplus to the insolvent debtor, and further that where a large portion of the debt thus attempted to be so secured and preferred is created at the time of the giving of the preference that the transaction is fraudulent and void as unreasonably hindering and delaying creditors, each and every one of which said vitiating elements existed in the case at bar, and were shown by the undisputed evidence coming from the plaintiff and his own witnesses.

*Beall & Beall* and *W. B. Crockett,* for defendant in error.—(a)   Reservation to a debtor of any balance after paying the debt will not render conveyance void.   (b)   Not only must the intent to hinder and delay creditors exist but the conveyance must have such an effect.   Greer v.

Richardson Drug Co., 1 Texas Civ. App., 637; Martin Brown Co. v. Cooper, 82 Texas, 243.

Mr. Justice PHILLIPS delivered the opinion of the court.

The suit was instituted by W. L. Edmondson against G. B. Coughran, sheriff of Mitchell County, and the City National Bank of Colorado, for damages for the conversion of a stock of goods, attached by the sheriff as the property of J. A. Henderson at the suit of the bank against the latter. Edmondson claimed that the goods were his property at the time of the seizure. The defendants contended that the goods belonged to Henderson and were properly subject to the levy, and that the transaction whereby Edmondson was clothed with the apparent title to them was fraudulent and but a device for placing the goods beyond the reach of Henderson's creditors. A jury trial resulted in a verdict and judgment for the defendants, reversed by the Honorable Court of Civil Appeals because of errors, according to its view, in the court's charge. The writ of error was granted upon the petition of the defendants because the holding of the Court of Civil Appeals was regarded as in conflict with Gallagher v. Goldfrank, 75 Texas, 562, 12 S. W., 964, and other cases.

The stock of goods was originally owned by M. C. Ratliff. Henderson negotiated a trade with Ratliff, according to the latter's testimony, wherein he agreed to exchange the stock of goods for 240 acres of land in New Mexico, belonging to Henderson, $150 in money, and a note for $200 to be also signed by Edmondson. The trade was thus made except that the goods, instead of being conveyed to Henderson, were, according to the bill of sale, conveyed to Edmondson. Henderson was then insolvent. At the time of the transaction Edmondson held Henderson's note for $200 for money advanced the latter to pay interest upon a lien indebtedness against Henderson's New Mexico land, secured by personal property which realized $135, leaving the principal of the note $65, though it does not appear from the record whether it had been thus credited at the time of the transaction with Ratliff. There is testimony by Edmondson that Henderson stated to him that he would give the latter a half interest in the land in consideration for his advancing the $200; and later offered to deed him the entire tract; but that he declined it, not desiring to assume the existing indebtedness of $200 against the land. Thereupon Henderson gave Edmondson a note for $1000 secured by a deed of trust lien upon the land, as collateral security for the $200 note, the deed of trust, however, not being recorded. In the negotiation between Henderson and Ratliff, the latter demanded that he be paid as much as $350. This Henderson was unable to pay, stating to Edmondson, according to the testimony of Edmondson, that the trade was off so far as he was concerned, that he would turn it over to him, and that whatever deal Edmondson could make with Ratliff would be satisfactory to him. According to Edmondson's statement he then took up the matter with Ratliff and closed the transaction with him, paying, himself, to Ratliff the $150 and giving him a $200 note signed

also by Henderson, however; Henderson and wife delivering their deed to Ratliff to the New Mexico land. The stock of goods exchanged by Ratliff invoiced about $2300 at the time of the attachment, and was worth, in bulk, approximately $1000 or $1200. According to Ratliff's testimony, while he discussed the terms of the trade over the telephone with Edmondson, the trade with him was negotiated and closed by Henderson, and a written contract embodying the terms upon which it was consummated, as above stated, was entered into between them; and he was not aware until the end of it and the delivery of the goods, that they were to be conveyed to Edmondson instead of Henderson. It is undisputed that Edmondson furnished the $150 paid to Ratliff, but the result of the transaction in itself was that for this amount and the delivery of a $200 note signed by Henderson and himself, he got the entire stock of goods worth $1000 or $1200, though Henderson's land constituted necessarily the substantial part of the consideration for them,—Henderson being insolvent at the time. There is testimony in the record sufficient to support the conclusion that the understanding between Edmondson and Henderson was that Edmondson should take the stock of goods and with it conduct an ordinary retail business in his own name, selling it out in the usual course, reimburse himself for the indebtedness due him by Henderson and defray all expenses out of one-half the proceeds, paying any surplus of such half to Henderson, and retaining the other half for himself as representing the half interest in the land claimed to have been given him by Henderson.

At the time of this transaction Edmondson had no title to any interest in the New Mexico land. Henderson being insolvent, any pretended gift to Edmondson of a half interest in the land was void as to Henderson's creditors. Edmondson acquired, therefore, no interest in the goods on account of the transfer of the land to Ratliff as a part of the consideration for them. A creditor of an insolvent debtor may receive property for his debt if not more than reasonably sufficient in value to discharge it, but where the value of the property materially exceeds the debt, the transaction is deemed fraudulent in law, since its necessary effect is to place the surplus beyond the reach of creditors. Edmondson was Henderson's creditor to the extent of the amount due upon the $200 note representing the amount advanced by the former to pay the interest upon the indebtedness against the land; but if it be conceded that no part of this note had been paid at the time of the acquisition of the stock of goods, it is manifest that the value of the stock—$1000 or $1200—was altogether disproportionate to the amount of the debt. The $350, representing the $150 paid by Edmondson in cash to Ratliff and the $200 note given to Ratliff in the trade, as well as the expense incurred by Edmondson in perfecting the title, etc., so that the trade might be made, was a new debt, incurred as a part of the transaction of the conveyance of the goods to Edmondson and so that he might acquire them; and could not be reckoned as an indebtedness, which, as against Henderson's creditors, it was competent to discharge by a conveyance of the goods. Gallagher v. Goldfrank, 75 Texas, 562, 12 S. W.,

964. The value of the goods being admittedly substantially in excess of Henderson's indebtedness to Edmondson, it was plainly not erroneous for the court to charge that the transaction was void if the jury found that its design was not only to secure Edmondson in the repayment of the indebtedness owing him by Henderson, but to enable the latter to obtain the balance of the proceeds realized from the sale of the goods. It was as clearly not improper to instruct, as was done in the succeeding paragraph of the charge, that the verdict should be for the defendants if it were found that it was the intention of Edmondson and Henderson that the former should take the stock and sell it at retail, repaying himself the amounts due him by Henderson and paying over the surplus to the latter. Such a transaction is void, since its effect is to remove the debtor's property, subject to the claims of other creditors, beyond their reach for an indefinite time. Gallagher v. Goldfrank.

The instructions of the court were in accord with the repeated adjudications of this court. The issues were resolved against the defendant in error by the jury upon evidence which supports the verdict. The judgment of the Court of Civil Appeals is reversed and that of the District Court is affirmed.

*Reversed and judgment of District Court affirmed.*